May it please the Court. I'm Rusty Crandall, and I'm here with my colleague, Karen Aldama. It's our privilege to be appointed as pro bono counsel for Mr. Sublett. I'd like to reserve one minute for rebuttal. This dispute is really about the facts, facts that must be resolved in Mr. Sublett's favor on a dismissal from summary judgment. Resolving the disputed facts and inferences in Mr. Sublett's favor, this case should be remanded for consideration of Mr. Sublett's permanent injunction claim and his claim for damages against Dr. Lockhart. A number of different issues were raised in the briefs, and I'm happy to start wherever the Court would like. But without further questioning, I'll go ahead and start with the injunctive relief claim. There is no dispute that Mr. Sublett's persistent and painful ulcers constitute a serious medical need, so I'll turn to the deliberate indifference claim or the deliberate indifference element. A factual dispute exists about whether the Department is acting with indifference in refusing to provide him a referral to a dermatologist and to have a Doppler study performed on him. In February 2012, Mr. Sublett met with a vascular surgeon. He determined that there was good circulation, assessed Kaposi's sarcoma in his legs and trunk, and recommended that he be referred to a dermatologist. In June 2012, a dermatologist saw him, disagreed and said, it doesn't look like you have Kaposi's sarcoma to me. And indeed, the biopsies that were taken on multiple times reached the same conclusion. Correct. And he said, well, let's have a Doppler study performed. That way we can review the circulation of the blood in his body. His treating physician saw him a couple of months later and agreed with the assessment of the specialist. On an urgent priority, he requested that Mr. Sublett be sent to a dermatologist and to have this vascular study performed on him. Without any explanation, the Department has denied this request. This is similar to the Snow case in the Ninth Circuit, where a hip replacement was decided to be necessary by a treating physician and a specialist, but was denied without any explanation. Not exactly. I mean, a hip replacement, you know it's going to be accomplished. And what I find perhaps missing in the plaintiff's claim, and in particular it shows up on the deliberate indifference claim, is anything that makes the connection between the relief he seeks, that is the kind of treatment he's asking for, and whether that's really going to change anything. Well, first, the whole reason that this evidence doesn't exist is because the Department prevented it from existing. So it's diagnostic procedure. So Mr. Sublett doesn't know what a Doppler study would have revealed. He doesn't know what a dermatologist would have said, because the Department prevented him from seeing it. So it would be unfair to give the Department. I mean, I know whatever it might have disclosed in a diagnostic fashion, if anything could be done at that point. I mean, realistically, some maladies can't be remedied. And the description of his condition, apparently the inference of, and I confess I've lost track of which doctor was which, so I shouldn't fill in the blank, but it seems to me that he has this condition. We can treat the symptoms, but there's really not much we can do about the underlying causes at this point. And is there any evidence to the contrary? Well, what we do know is when he has been sent to specialists, his condition usually improves afterwards. For example, when he was sent to a wound treatment center, his condition improved afterward. And the fact that Mr. Sublett, you know, they're putting bandages on it, they're giving him pain meds, but that isn't working. His condition is getting better. Well, it did for at least a while. It meant like 10 or 11 months after being treated by Dr. Lockhart before he returned. Sorry, I didn't understand that question. There was a period of time when he was urging the sarcoma diagnosis, and Dr. Lockhart didn't think that's what it was. And Mr. Sublett was presumably unhappy, but he didn't return for medical treatment for close to a year, and at some point requests the same kind of treatment that Dr. Lockhart had given him before that relieved the pain. Exactly. You know, and that's the point is, we don't know if further, you know, a Doppler study would have resulted in someone knowing something that would have cured the problem. Well, is we don't know enough to make out a case for an injunction? Well, on a summary judgment standard where you have to give reasonable inferences to Mr. Sublett, I think the fact that you have a specialist and a treating physician agreeing that he needs a procedure that is requested on an urgent basis, that gives rise to a reasonable inference that he was harmed by not receiving the care that was prescribed. Particularly when it's here, the record is undisputed that Mr. Sublett's condition continued to worsen. I would refer the court to ER 388 just two weeks after the consultation request. Please let me go get to a dermatologist. My legs get worse each day. I'm begging for help. A month later, I'm in severe pain. This is ER 385. The skin is coming off in more, on my legs in more places. I need emergency treatment. Giving reasonable inferences to Mr. Sublett and construing the record in his favor, at the very least, this raises a factual issue about whether his claim for permanent injunction should be allowed to proceed. When he saw the specialist, and I forget which doctor it was, the recommendation for treatment was the UNABU, right? Correct. This is the Justice Dr. Longhurst. He then repeatedly rejected. So is there any harm that you can show, assuming that the delay in seeing the specialist was created a factual issue as to deliberate inference? Can you demonstrate harm from the record that we have? Sure. So let me just step. This is the question deals with not the permanent injunction claim, but the claim for damages against Dr. Longhurst. When an UNABU was finally requested, this was almost two and a half years after Dr. Lockhart himself determined that a consultation was necessary. As you said rightfully, Judge Clifton, there wasn't an 11-month period where he didn't have symptoms. But by the time that this UNABU was requested, his condition was worsening. The skin was peeling off, and he couldn't use the UNABU because compression, given his worsening condition, was just unbearable to him. And this isn't the only evidence of harm from Dr. Lockhart's failure to send him to a specialist. For example, later, after he was sent to a dermatologist, the dermatologist determined that he needed to be sent to a wound treatment center. The government admits in their briefs that he was beneficially treated when he was finally sent to a wound treatment center. And then there's also a disputed issue of fact, because, you know, the government contends that he was healing just fine, and everything was doing fine after Dr. Lockhart made this consultation request. But that is a disputed issue of fact. There was this 11-month window, but right after that, Mr. Sublett continued, started complaining, the skin is coming off around my ankles from the disease like it did before, and it's very sore and painful. ER 746, it's getting worse and hurt real bad. You know, so continued pain is harm. And construing the record in favor of Mr. Sublett, there's a genuine issue of fact about whether he was harmed. Do I have to save the balance of your time for rebuttal? Yes, thank you. You may. Roger Perry, Arizona Attorney General's Office, appearing for the defendants. A medical disagreement about diagnosis, and there is essentially no disagreement about the diagnosis in this case. A medical disagreement about the appropriate treatment, and there's no significant disagreement about the treatment to be provided in this case, do not amount to deliberate indifference. Well, there are requests for consultations or examinations that were not honored. And Dr. Lockhart at one point consulted with the dermatologist, had a teleconference of some kind with the patient, and there didn't appear to be any follow-up after that, which made me wonder, well, why have the consultation with the dermatologist in the first place? I mean, there are some loose ends out there that didn't get tied down or followed up on. And so what we need to do is look to the relevance of the consultation, given the standard to be applied. So here we have, you know, they have to make two prongs to show deliberate indifference. He must show the course of treatment Dr. Lockhart chose is medically unacceptable under the circumstances. But no jury could reasonably conclude that that was the case when every specialist to whom Mr. Sublette was sent agreed on the general approach to treatment. Some providers recommended the Uniboot, which is just another form of wrapping. He's been wrapped. So another form of wrapping, but others do not recommend it. Dr. Hu, for example, did not recommend a pressure wrapping of any kind. So, again, a mere disagreement in medical opinion does not constitute deliberate indifference. The second prong has two prongs itself, a purposeful act or failure to respond to prisoners' medical need, and two, harm caused by the indifference. Appellant finds a failure to respond to a medical need from not responding to that dermatological consult. You need to look at that consult, too. If that's a blind consult, the dermatologist is told he has carpose sarcoma, which is incurable. So if you see it written anywhere on a form saying he has carpose sarcoma, it's because he does. It just isn't manifesting in ulcers. So he says he has carpose sarcoma. He's got ulcers, so they're probably carpose sarcoma ulcers, but it's hard to say without seeing the patient. I need to read up on it, and you should really redo that biopsy because it's 40 years old, he says. Actually, it's 50 years old. But no reasonable jury could find from that that Dr. Lockhart purposely failed to respond to some of this medical need when he was providing treatment appropriate to venous stasis ulcers, and the clinical picture suggested nothing else. In the words of Dr. Capple on July 27, 2010, just a few months after seeing, after Dr. Lockhart stopped seeing the patient, this does not appear to be carpose sarcoma by any stretch of the imagination from a physical exam standpoint. These are, he says, classic venous stasis ulcers. There's nothing from which to draw the reasonable inference that Dr. Lockhart was seeing anything different. That is, was failing to respond to his medical needs. What about counsel's injunctive relief claim based on the Doppler study and the physician's evaluation that there was an urgent need for referral for that study? Does that create a tribal issue effect? No, because the, it's another study recommendation in a series of study recommendations, and we've gone through them. Ultimately, each time the carpose sarcoma diagnosis is not put to rest, but it's said these are not ulcers that arise from carpose sarcoma. This is venous stasis ulcers. So, it's a simple one. Well, what was the purpose of the Doppler study? I didn't understand it to be an effort to determine whether it was carcoma. I thought it was intended to find out more about the causation of what, the symptoms that were manifested. And it was, and again, I'm lost in the names of the doctor, Dr. Kalsaros, or something like that, who made what he described as an urgent recommendation, and it just, nothing seems to have happened after that. I couldn't find anything that explained that there was a medical judgment. To the contrary, it just was left hanging. Well, put that together with, so it's hard for anybody to figure out what would have happened. I mean, I pose the question to Plaintiff's counsel, is there anything that tells us that would lead to anything? And his response is sensibly, we don't know, because we don't have the results of such a study. And I'll give him that. That's right. We don't know, and we don't know whether the study would have made any difference. And I think, you know, more to the point, on the permanent injunction standard, there's no reason to think that Mr. Ryan had any idea that there was a recommendation for a Doppler study, or there was a recommendation from a dermatologist, although the recommendation of the dermatologist ultimately followed. So I take it, and I hope I'm stating counsel's argument correctly, is that there's no indication in the record as to what therapeutic value a Doppler study may have, or maybe what diagnoses or conclusions that the Doppler study would reach, because that was never conducted. But the fact that a medical professional recommended it for his condition and marked it urgent, that creates certain inferences. So the question to me becomes what inferences are created and whether those inferences are sufficient to create a factual dispute, not that he would prevail, but a factual dispute such that summary judgment should be precluded. So what inferences are fairly drawn from the fact that a medical professional looked at his condition and recommended a Doppler study and indicated that it was urgent that he obtain one? Well, I guess I want to make two responses to that. First, if you look at the cases we've all cited in the briefs, they all dealt with something that you have bad hips. We replace the hips, you'll be better, but we don't do it. You've got a bad tooth. We can do a root canal and it'll fix it, but they don't do it. All of the cases have something where there's something that can be done, we know what'll happen, they don't do it, and that is deliberate indifference and gets them relief. We don't have that here, where we have a Doppler study, we have no idea. It's just another study recommended, and it's just another study in a long series of studies. Here's a guy who comes in every time and says, I have carpose sarcoma, I hurt, fix me. And they say, well, here's the treatment, do this, do this, do this. And he says, you're treating the symptoms, you're not treating my cancer. And so, you know, again and again he keeps hitting that, and people keep coming back and saying, okay, you know, let's do another biopsy. You know, they keep trying to put this to rest, which is why Dr. Lockhart, you know, he says, I think that's how he says it, let's put this to bed in his recommendation or, yeah, in his request for the dermatological consult. He also don't get the permanent injunction on that because, again, Dr. or Mr. Ryan doesn't know about any of these recommendations, and so there's no deliberate indifference there. So the plaintiff or the appellant says, you know, I have a carpose sarcoma, I hurt, fix me. This is not a suit against Mr. Ryan, but a suit against his office. And so we don't need to show that Mr. Ryan knew anything. But if this is a – if this is a suit against his office, that argument hasn't been made anywhere. In that portion of their brief, in their opening brief, the only cases they cite are sites to cases that are against the individuals in their individual capacity. And nowhere have they argued that his office was somehow the moving force behind the deprivation or that there's a policy in custom and play that is behind some constitutional deprivation. Nowhere has that been argued all the way through until this moment. So that's why we don't get a permanent injunction. Roberts. Well, for injunctive relief, who would you propose that they focus on? I'm sorry, Your Honor. We're talking here about a claim for injunctive relief, not a claim for damages. Who is it that should be the defendant of choice? I understand that Mr. Ryan isn't spending his day reviewing Mr. Sublett's medical records and second-guessing the treatment and what exams are given and not given. But somebody within the department is responsible. Are you suggesting that maybe they just named the wrong person, or is there something institutionally that prevents the entry of a permanent injunction against the director? No. You either, Your Honor, they either sue the office, and then they can say there's a policy in custom, there's something about the way this office is being run that leads directly to this constitutional infirmity, and that's how you get your preliminary injunction. Or you can say that Mr. Ryan himself, as I read the case law, it surprised me, but I think I read this right, that they can say Mr. Ryan himself, we're suing him individually, and he knew this stuff was going on and didn't fix it. Either way, I think you can get an injunction. One leveled against the department. The other leveled against the individual. But in any event, you need to have one of those showings. You need to show that Mr. Ryan knew about it, or you need to show that the department is being sued and that there's a policy in custom behind the constitutional deprivation. Thank you. We'll have rebuttal. Thank you, Your Honor. Quickly. Director Ryan isn't being sued for damages. He's just named in his official capacity for injunctive relief. I would refer the Court to the Ninth Circuit's recent decision in Caldwell, 763 F. 3rd. 1060, a plaintiff seeking injunctive relief against this State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to the injunctive relief. There's no question that Mr. or Director Ryan could order that he receive the treatment that's requested. And secondly, this case is not about a dispute about disagreement of medical opinions. For the injunctive relief claim, everyone agreed, the treating physician and the specialist, send him to a dermatologist, have the Doppler study performed. There's no dispute. And there's no dispute that Mr. Sublett needed to be seen by a specialist at the time he was under Dr. Lockhart's care. Dr. Lockhart himself submitted a request saying that he needed to be seen by a dermatologist, but for the remaining 23 months he was under his care, never ensured that this happened. Thank you, Your Honors. Roberts. Thank you. We thank both counsel for your arguments. We thank in particular Mr. Crandall and his firm for taking this case as part of the Court's pro bono representation project. The case just argued is submitted.
judges: Rakoff, Clifton, Nguyen